IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


RAY DANSBY                                                    PETITIONER

     V.                        Civil No. 03-CV-1146

LARRY NORRIS, Director of
Arkansas Department of Corrections                           RESPONDENT

## MEMORANDUM OPINION AND ORDER

     Petitioner Dansby was convicted of capital murder by a jury in
Union County, Arkansas in 1993.  After exhausting his remedies at the
state level, Petitioner seeks habeas relief on 26 separate grounds.
For reasons reflected herein.

     Before the Court are Petitioner's Petition for Writ of Habeas
Corpus (Doc. 8), Amended Petition for Writ of Habeas Corpus (Doc.
10), and Second Amended Petition for Writ of Habeas Corpus (Doc. 25).
Respondent has responded to the three petitions (Docs. 13, 14, 28).
The Petition and Amended Petitions are **DENIED** in their entirety.

## I.  FACTUAL BACKGROUND

     The facts of this case were set out in detail in previously
reported decisions and can be reviewed in *Dansby v. Arkansas*, 893
S.W.2d 331 (Ark. 1995).  On August 24, 1992, Petitioner arrived at
Brenda Dansby's (Petitioner's ex-wife) house.  Brenda was in her
vehicle, while her boyfriend, Ronnie Kimble, was sleeping on a couch
inside the residence.  Justin Dansby, the nine-year old son of
Petitioner and Brenda Dansby was also in the residence.  Justin
witnessed Petitioner twice order his mother to exit the vehicle and

saw Petitioner shoot her in the arm and then fatally in the neck. Petitioner then entered the residence and shot Kimble in the chest. After being shot, Kimble retrieved a gun from under the couch and moved behind the couch.  Justin heard clicking noises from Kimble's gun, but never heard it fire.  Petitioner then chased Kimble through a straight hallway to Justin's room.  At this point, Justin heard approximately five more shots.  Justin went to the back of the house and saw Petitioner standing over and kicking Kimble.  Kimble died several days later.

## II.  PROCEDURAL HISTORY

On June 11, 1993, Petitioner was convicted of two counts of capital murder and sentenced to death by lethal injection on both counts.

Petitioner appealed those convictions to the Arkansas Supreme Court, which were affirmed in *Dansby v. Arkansas*, 893 S.W.2d 331 (Ark. 1995).  Petitioner sought post-conviction relief through Arkansas Rule of Criminal Procedure Rule 37, which was denied.  The Arkansas Supreme Court affirmed the denial of Petitioner's post-conviction relief in *Dansby v. Arkansas*, 84 S.W.3d 857 (Ark. 2002).

## III.  STANDARD OF REVIEW

Section 2254 of Title 28 of the U.S. Code (1996) permits a prisoner in state custody to petition a federal court for a writ of *habeas corpus* "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

2

Specifically, section 2254(d)(1) of Title 28, as amended by the AEDPA, provides:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1)(1996).

The United States Supreme Court has stated that the purpose of § 2254(d) as amended by the AEDPA is to limit the scope of federal court review "in order to effect the intent of Congress to expedite *habeas* proceedings with appropriate deference to the state court determinations." *Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000)(citing *Williams v. Taylor*, 529 U.S. 362 (2000)). A state court decision will be viewed as "'contrary to' clearly established federal law if the state court has applied a rule that directly contradicts Supreme Court precedent or has reached a result opposite to a result reached by the Supreme Court on 'materially indistinguishable' facts." *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001)(citing *Williams*, 529 U.S. at 405 (O'Connor, J., concurring)). When reviewing a state court decision for reasonableness the question is whether the state court's application of "clearly established federal law" was "objectively reasonable"; "an unreasonable application of federal law is different from an incorrect application of federal

3

law." *Williams*, 529 U.S. at 409-10; *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001).  Therefore, a state court's application of federal law might be erroneous, in this Court's independent judgment, yet not objectively unreasonable.  *Kinder,* 272 F.3d at 538.  "We must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of the circumstances." *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 409-13 (2000) (O'Connor, J., writing for the majority)).

A *habeas* petitioner may also seek relief if the state court made an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2). However, the state court's findings are subject to a deferential standard of review; in fact, these findings are presumed correct unless the petitioner can rebut those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Kinder*, 272 F.3d at 538; *James v. Bowersox,* 187 F.3d 866, 871 (8th Cir. 1999).

State courts should have a proper opportunity to address a petitioner's claims of constitutional error before those claims are presented to the federal court.  *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991).  The requirement of exhaustion of remedies is satisfied if the petitioner has "fairly presented" his claims to the state court, thus preserving those claims for federal review, by properly raising both the factual and legal bases of the claim in state court proceedings, affording that court "a fair opportunity to

4

rule on the factual and theoretical substance of [the] claim." *Krimmel v. Hopkins*, 56 F.3d 873, 876 (8th Cir. 1995). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997)(citations omitted). Even if a petitioner has technically met the exhaustion requirement, a federal court may still be prevented from considering the federal *habeas* claim if it is procedurally defaulted.

"A *habeas* petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 729-32. A habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729 (citations omitted). If a state court declines to address a petitioner's federal claim because he failed to meet a state procedural requirement, the Federal district court is barred from reviewing that claim. *Id.* Finally, a claim may be lost due to procedural default at any level of state court review: at trial, on direct appeal, or in the course of state post-conviction

5

proceedings.  *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001).

Procedural default may be excused if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice is limited to a showing of actual innocence.  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

## IV. PETITIONER'S ASSERTED GROUNDS FOR HABEAS RELIEF

A.   **Claim I:** Petitioner is Actually Innocent

Petitioner claims that he is innocent of capital murder.  He alleges that the deaths of Brenda Dansby and Ronnie Kimble resulted in his justified use of lethal force in self defense against Brenda Dansby and Ronnie Kimble, who were both armed with loaded handguns. Petitioner is contending that there was insufficient evidence of premeditation and deliberation to prove the capital murder charges. This argument was presented to and rejected by the Arkansas Supreme Court.  *See Dansby v. Arkansas*, 893 S.W.2d 331, 335-36 (1995).

After reviewing the evidence in the light most favorable to the appellee, the Arkansas Supreme Court found that the "evidence was overwhelming that [Petitioner's] killings of Brenda Dansby and Ronnie Kimble were premeditated and deliberate acts."  *Id.* at 335-36.  The Arkansas Supreme Court stated:

6

Although the testimony is at variance among different witnesses as to he exact sequence of events during the shootings, there was much said as to the weapons used, and as to the nature, extent, and location of Ms. Dansby's and Mr. Kimble's wounds.  With reference to the shots fired into Brenda, Dr. Peretti testified that he located gunshot wounds near the left ear and upper chest of her body.  Greg Riggins, an eye witness to Brenda's murder, testified as to [Petitioner's] hesitation of several seconds before he fired the final shot into Brenda's head.  In observance of the wounds to Ronnie's body, Dr. Peretti testified that Ronnie sustained wounds to the left ear, chest, left upper back, and right arm, as well as two superficial wounds to the left flank.  Particularly, it was Dr. Peretti's opinion that the wound to Ronnie's back occurred when he was "probably bent over." [Petitioner's] son Justin, another eye witness, testified that he watched as his father kicked Ronnie twice, and that he heard his father say something after shooting him.  In light of this testimony, the jury could have easily inferred that [Petitioner] fired multiple shots into both victims in a premeditated and deliberated manner.  Also significant was Larry McDuffie's testimony that [Petitioner] admitted to having planned the murders, as [Petitioner] was troubled by misdemeanor charges which Brenda had caused to be filed against him, which was corroborated by testimony that [Petitioner] was due in court on the morning of the incident.  In sum, the evidence was overwhelming that [Petitioner's] killings of Brenda Dansby and Ronnie Kimble were premeditated and deliberate acts.

*Id.* at 336.

The Arkansas Supreme Court's decision on Petitioner's insufficiency of the evidence claim was not "contrary to or involved unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." *See* 28 U.S.C. §2254(d)(1)(1996).  Thus, Claim I must be dismissed.

7

B. **Claim II:** <u>Petitioner's Constitutional Rights were violated when the trial court refused to permit him to impeach jailhouse informant Larry McDuffie with highly probative evidence of bias and motive to lie; and</u> **Claim III:** <u>Petitioner's Constitutional rights were violated by the State's failure to disclose material exculpatory information, presentation of and failure to correct testimony it knew to be false and other prosecutorial misconduct in connection with the testimony of jailhouse informant Larry McDuffie.</u>

Petitioner claims that the state trial court unconstitutionally denied him the opportunity to impeach Larry McDuffie, a jailhouse informant, with evidence of bias and a motive to lie, and that the state failed to disclose exculpatory information and other prosecutorial misconduct regarding McDuffie. Respondent contends that Claim II is procedurally defaulted, as Petitioner failed to cite federal law or assert a constitutional error in state court, and the Arkansas Supreme Court's ruling on Claim III was not unreasonable or contrary to federal law.

A review of the documents, to include the state court transcripts, makes clear that Petitioner relied solely upon state law in addressing his impeachment claim during his direct appeal in the state courts.[1] The Arkansas Supreme Court ruled that the trial court was correct in ruling that the proffered "evidence" was impermissible extrinsic evidence, citing Arkansas Rule of Evidence 608(b) and

---

[1] The only mention of federal law or the U.S. Constitution was a statement that the "right to limit testimony must be weighed against the defendant's confrontation rights and fair trial rights guaranteed by the Sixth Amendment." *See* Abstract of the Record and Brief of Appellant (Direct Appeal), No. CR-94-00030, p. 304 (filed July 19, 1994). However, Petitioner failed to assert that his constitutional rights or federal law was violated when the trial court refused to allow him to present extrinsic evidence of Larry McDuffie's alleged bias and motive to lie.

8

*Biggers v. Arkansas*, 878 S.W.2d 717 (Ark. 1994). *Dansby v. Arkansas*, S.W.2d 331, 338 (Ark. 1995). The Arkansas Supreme Court did not address any federal or constitutional laws in reviewing the merits of Petitioner's impeachment claim.

In his post-conviction appeal (Rule 37 petition), Petitioner did present a federal law challenge, claiming an "[i]nability of defense to bring out evidence about key witness' close ties with police to demonstrate bias and attack credibility violated *Kyles v. Whitley*, 115 S.Ct. 1555 (1955)".[2] It is not entirely clear whether Petitioner cited to *Kyles* in support of Claim II or Claim III,[3] but these claims are procedurally defaulted. The Circuit Court of Union County, Arkansas addressed the merits of Petitioner's numerous ineffective assistance of counsel claims, without addressing the merits of Petitioner's claim that the trial court erred in refusing to allow Petitioner to attempt to impeach Larry McDuffie in the manner Petitioner sought. The court ruled that the issues other than those addressed had "either been dealt with... on direct appeal, or should have been raised on direct appeal, and those issues and claims are

---

[2]Petitioner contended that the trial court violated *Kyles v. Whitley*, 115 S.Ct. 1555 (1995) a case that involved the issue of non-disclosure of information about a state's key witness. It did not deal with the issue of what a trial court permits a defendant to use while attempting to impeach a state's witness; which seems more suited to Petitioner's next claim, Claim III, than his current claim, Claim II. Therefore, even without the procedural default of the claim, it is highly unlikely that the claim has any merit.

[3]Respondent contends that *Kyles* was cited to support Claim II, although he then points to the fact that *Kyles* deals with the non-disclosure of information (which would support Petitioner's contentions in Claim III). *See* Doc. 28, Response to Second Amended Petition for Writ of Habeas Corpus, pp. 5-8.

9

denied." (Order Denying Relief Pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, Rule 37 Tr., Vol. 1, p. 130.) Furthermore, it cannot be said that Petitioner adequately presented a federal law claim to the state courts, as his one and a half page claim failed to state what information had not been disclosed in violation of *Keyes*, and how and when Petitioner became aware of the alleged non-disclosures.

During state court proceedings, Petitioner failed to raise a federal question regarding the trial court's refusal to permit Petitioner to present extrinsic evidence of bias and a motive to lie in his attempt to impeach the state's witness, Larry McDuffie. Petitioner's federal challenge was not presented in a timely and procedurally correct manner. Thus, the claim is procedurally defaulted as the Arkansas courts were not provided an opportunity to address Petitioner's constitutional challenge to the trial court's ruling. *See Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992). A procedurally defaulted claim cannot be heard in federal court absent a showing of cause and actual prejudice or a showing of actual innocence. *Heffernan v. Norris*, 48 F.3d 331, 333 (8th Cir. 1995). Petitioner has failed to show cause and actual prejudice or that he is actually innocent. Therefore, Claims II and III are procedurally defaulted and their merits cannot be reviewed and must be dismissed.

10

C.   **Claim   IV:**   Trial   Counsel's   representation   was
unconstitutionally burdened by multiple conflicts of interest.

Petitioner next claims that his trial counsel's representation
was unconstitutionally burdened by multiple conflicts of interest.
Respondent contends that this claim is likewise procedurally
defaulted.

A review of the state transcripts and state court rulings reveal
no such claims were ever made.  This claim is then procedurally
defaulted as the Arkansas courts were not provided an opportunity to
address Petitioner's contention that his trial defense counsel was
unconstitutionally burdened by multiple conflicts of interest.  *See
Kennedy v. Delo*, 959 F.2d 112, 115 (8th Cir. 1992).  A procedurally
defaulted claim cannot be heard in federal court absent a showing of
cause and actual prejudice or a showing of actual innocence.
*Heffernan v. Norris*, 48 F.3d 331, 333 (8th Cir. 1995); *Coleman v.
Thompson*, 501 U.S. 722, 750 (1991).  Petitioner has failed to show
cause and actual prejudice or that he is actually innocent.
Therefore, Claim IV is procedurally defaulted and its merits cannot
be reviewed and must be dismissed.

D.   **Claim V:** Errors and omissions by trial counsel during the
guilt phase of the trial deprived Petitioner of his constitutional
rights to the effective assistance of counsel and to a fair trial.

Petitioner's fifth claim for habeas relief is based on his right
to counsel.  Petitioner claims his attorney was ineffective during
the guilt phase of the trial.  Respondent asserts that certain
aspects of Petitioner's claim are procedurally barred from review,

11

**AO72A**
**(Rev. 8/82)**

while the other areas were properly dealt with by the state courts.

In order to prevail, Petitioner must prove that the Arkansas Supreme Court's " ...decision[s] was contrary to or involved unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1)(1996).

The law regarding claims of ineffective assistance of counsel is clear. *Strickland v. Washington* provides the applicable law for which ineffective assistance of counsel claims must be analyzed. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1994). The two-part test for evaluating ineffective assistance of counsel claims is,

> [F]irst, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing
> that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is
> reliable. Unless a defendant makes both showings, it cannot
> be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the
> result unreliable.
>
> ***
>
> [J]udicial scrutiny of a counsel's performance must be
> highly deferential and . . . every effort [must] be made
> to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged
> conduct, and to evaluate the conduct from counsel's
> perspective at the time.

*Id.* at 687-689.

12

Additionally, Petitioner must do more than satisfy the standard provided in *Strickland*.   The United States Supreme Court has held that,

> But in the present context, petitioner must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal *habeas* court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.

*Bell v. Cone,* 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (internal citation omitted).

Petitioner specifically alleges that his trial defense counsel was ineffective by failing to adequately present a self-defense theory; failing to impeach Larry McDuffie; failing to retain, consult and present the testimony of an expert witness regarding the credibility and reliability of child witnesses (as Petitioner's 9-year old son was a witness to the events that led to Petitioner's conviction);  failing to object to the repeated characterization of the deaths as "murders"; failing to object to the prosecutor's comment during closing argument regarding the testimony defense witness Jeffrey Tally as it was improperly procured or influenced by Petitioner's counsel; failing to timely object to repeated comments upon Petitioner's post-arrest, post-Miranda warnings invocation of his right to silence, as well as to seek suppression of the statement; and failing to move for a change of venue.

13

The Arkansas Supreme Court addressed the merits of several of Petitioner's ineffective assistance of counsel claims during his post-conviction appeal (Rule 37), many of which were not included in the current habeas corpus petitions.[4] *Dansby v. Arkansas*, 84 S.W.3d 857 (Ark. 2002). Specifically, the court reviewed many allegations of pretrial ineffective assistance of counsel as well as the allegation that counsel was ineffective by failing to move to suppress Petitioner's statement to law enforcement officials. The court concluded that Petitioner failed to assert what could have been the basis for the trial court to have granted a motion to suppress, and that Petitioner was not prejudiced by his counsel's failure to move for suppression as he confessed his involvement in the murders to the police. Other than the claim that counsel was ineffective in failing to seek suppression of Petitioner's statement to the police, the remaining claims in the current habeas petitions were not presented to state courts.

Petitioner must prove that the Arkansas Supreme Court's opinion discussed *supra* is contrary to or an unreasonable application of federal law, which has not been done. This Court is unable to find any evidence where the Arkansas Supreme Court's opinion was contrary to or that it was an unreasonable application of federal law. Moreover, Petitioner has failed to demonstrate that he received

---

[4]Petitioner did not raise any ineffective assistance of counsel claims in his direct appeals.

deficient representation. Even if this Court were to assume deficient representation occurred, Petitioner has failed to set out how he was prejudiced by such representation. Again, Petitioner must prove both that counsel's "representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. Without proof of both, this Court cannot say that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable." *Strickland*, 466 U.S. at 687.

The remaining claims of ineffective assistance of counsel were not presented to the state courts, and as such, are procedurally defaulted. Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of these issues, nor has he shown that it would be a fundamental miscarriage of justice for this Court to decline to review these issues. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under the circumstances, Petitioner has not met his burden under 28 U.S.C. § 2254 and Claim V must be dismissed.

    E.   <u>Claim VI: Petitioner's Fifth, Eighth and Fourteenth Amendment rights were violated by improper testimony and comment on Petitioner's post-arrest silence.</u>

Petitioner alleges that the trial court allowed improper testimony regarding his invocation of his rights to remain silent after he was arrested and given his *Miranda* rights. Respondent

15

states that the trial court did not abuse its discretion by allowing the challenged testimony.  Respondent contends that the challenged testimony was not about statements of Petitioner invocation of his right to silence, but rather explanations as to why a tape-recording of Petitioner's statement did not exist.  Furthermore, Petitioner refused the trial judge's offer to admonish the jury regarding the officers' testimony.

Two police officers testified about the circumstances of Petitioner invoking his right to remain silent.  During the state's case-in-chief, Officer Mike Stegall testified that, after Petitioner waived his rights to an attorney and to remain silent, Petitioner made statements regarding three guns being present at the scene, where he had disposed of two of the guns, and the events that occurred at the scene.  After the state asked Officer Stegall whether a tape recording of Petitioner's statement existed, the officer testified that at that point Petitioner "invoked his rights and stated that he didn't want to say anything else without a lawyer." (Direct App. Tr., Vol. 4, p. 676.)  Officer Stegall also testified that Petitioner invoked his rights when being questioned about the time line of events listed on the rights waiver form.  *Id.* at 675. Lt. Michael Hill testified that Petitioner waived his right to an attorney and to remain silent, but he was also asked whether Petitioner then declined to talk further.  At that point, Petitioner's counsel objected and asked for a mistrial.  (Direct App.

AO72A
(Rev. 8/82)

Tr., Vol 5, pp. 804-05.)   The trial judge denied the motion for mistrial but offered to admonish the jury regarding the witness being asked if Petitioner had declined to talk.   Petitioner's counsel declined the court's offer of admonishment.   *Id.* at 807-09.

The Arkansas Supreme Court found no error, stating that the challenged testimony was not a comment on Petitioner's right to remain silent; but rather was an explanation to the jury as to why there was no tape recording of Petitioner's statement to the police. *Dansby v. Arkansas*, 893 S.W.2d 331, 340-41 (1995) (citing *Doyle v. Ohio.*, 426 U.S. 610 (1976); *Greer v. Miller*, 483 U.S. 756 (1987); *Tarkington v. Arkansas*, 855 S.W.2d 306 (Ark. 1993)).   In *Doyle*, the United States Supreme Court held that the testimony regarding the defendant's silence was a violation of due process because the state had "not claimed that such use in the circumstances of this case might have been harmless error." *Doyle*, 426 U.S. at 620.   The Court in *Miller*, reiterated that "the Due Process Clause bars '*the use* for impeachment purposes' of a defendant's postarrest silence." *Greer*, 483 U.S. at 763 (quoting *Doyle*, 426 U.S. at 619) (alterations in original).   The Arkansas Supreme Court's finding that the challenged testimony was not a comment on Petitioner's right to silence, but merely an explanation as to why a tape-recording did not exist is neither contrary to nor an unreasonable application of the law.   Even if the trial court erred in permitting such testimony, the  error was not:

AO72A
(Rev. 8/82)

'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different.

*Anderson v. Goeke*, 44 F.3d 675 (8th Cir. 1995). In the present case, Petitioner waived his rights and had given the police his version of what had occurred during the shootings. He also answered questions as to where the weapons were located, but then asserted his rights. The fact that the jury was informed that Petitioner invoked his rights after being asked to allow his statement to be tape-recorded does not rise to the level that would require his conviction be reversed. The Arkansas Supreme Court's decision is neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. Therefore, Claim VI must be dismissed.

F. **Claim VII:** Impermissible racial considerations affected all aspects of the charging, prosecution, conviction and sentencing in Petitioner's case.

Petitioner alleges that impermissible racial considerations affected all aspects of the state's case against him, thus violating the constitution, international treaties, and customary norms. However, Petitioner failed to provide any facts to support his allegation, other than state that he is an African-American.

Claim VII is procedurally defaulted, for at no time did Petitioner present to the Arkansas courts any issue regarding the

18

trial court allegedly violating international treaties and/or customary norms regarding race discrimination. The procedural default is not excused, as Petitioner failed to show cause and actual prejudice or that he is actually innocent. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Therefore, Petitioner's contention that the trial court violated international treaties and customary norms is procedurally defaulted and its merits cannot be reviewed and is dismissed.

G. **Claim VIII**: Petitioner's constitutional rights were violated by the process utilized to select and impanel the jury by which he was tried.

Petitioner alleges the jury that heard his case contained no black persons. This particular argument was addressed by the Arkansas Supreme Court. The court denied Petitioner's claim regarding a defective jury panel as the claim had not been preserved for appeal and stated that Petitioner had failed to raise and/or sufficiently develop the allegation at trial.[5] *Dansby v. Arkansas*, 893 S.W.2d 331, 336 (Ark. 1995) (citing *Hollaman v. Arkansas*, 846 S.W.2d 663 (Ark. 1993)).

---

[5]The Supreme Court of Arkansas found that the trial record "is barren of any information as to the composition of the jury or that Dansby made any specific objection in this regard. At most, the transcript of trial reveals that, prior to seating the jury, the trial court made inquiry of Dansby as to whether the jury was acceptable to him, to which Dansby replied that he 'would just continue [his] *Batson* objection towards the whole panel." *Dansby v. Arkansas*, 893 S.W.2d 331, 336 (Ark. 1995). The court noted that the trial record contains no ruling on Petitioner motion to "assure cross section of community for jury", and Petitioner failed to abstract a ruling of the trial court. The court emphasized that it is Petitioner's burden to obtain a ruling on his motion and matters left unresolved may not be raised on appeal. *Id.* (citing *Gilland v. State*, 883 S.W.2d 474 (Ark. 1994).

AO72A
(Rev. 8/82)

A district court is precluded from considering a claim that the State of Arkansas has denied on independent and adequate state law grounds, including state procedural grounds (such as a state court determination that a claim has been lost by default). *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (citing *Coleman v. Thompson* 501 U.S. 722, 729-30 (1991)) (additional citations omitted). The exceptions to this rule are when a habeas petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show actual innocence. *Id.* (citing *Coleman*, 501 U.S. at 750 (stating that default can be excused by the showing of cause and actual prejudice)); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (stating that a showing of actual innocence could excuse default); *Schlup v. Delo*, 513 U.S 298, 326-27 (1995) (stating that a showing of actual innocence could excuse default).

The Arkansas Supreme Court's finding that Petitioner's claim regarding an improperly impaneled jury was not preserved for appeal is an independent and adequate non-federal grounds that precludes our review. Furthermore, Petitioner has failed to show cause and prejudice for the default or actual innocence and Claim VIII is dismissed.

AO72A
(Rev. 8/82)

H.   **Claim IX:** The Court's denial of a defense motion for individual, sequestered voir dire of potential jurors denied Petitioner a fair trial; and **Claim X:** The prosecuting attorney's intentional use of peremptory strike in a racially discriminatory manner denied Petitioner a fair trial.

Petitioner did not present these issues to the Arkansas courts in either his direct appellate review or his post-conviction review. Therefore, these claims are procedurally defaulted.

In his direct review, Petitioner raised an issue regarding an improperly impaneled jury (see Claim VIII, above).  However, even if that issue was similar enough to satisfy habeas exhaustion and procedural default rules, Claims IX and X would be dismissed on the same basis as Claim VIII.  As discussed above in Claim VIII, the defective jury panel issue was decided on an independent and adequate state law ground, specifically that Petitioner had failed to preserve the issue for review.  Petitioner has not shown cause and actual prejudice, or actual innocence to excuse either the procedural default or the default of these claims on independent and adequate state law grounds.  Therefore, whether Claims IX and X are procedurally defaulted due to the state not having an adequate opportunity to review the issues, or are defaulted due to Petitioner not preserving the issues for appellate review, they are dismissed.

I.   **Claim XI:** Petitioner's right to a fair trial was violated by the court's failure to remove an individual for cause who could not sit as a fair and impartial juror.

Petitioner did not present this issue to the Arkansas courts in either his direct appellate review or his post-conviction review.

21

Therefore, this claim is procedurally defaulted. Furthermore, Petitioner has not shown cause and actual prejudice, or actual innocence to excuse either the procedural default or the default of the claim on independent and adequate state law grounds. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Therefore, because Claim XI is procedurally defaulted due to the state not having an adequate opportunity to review the issue and cause for excuse has not been shown, it must be dismissed.

J. **Claim XII:** <u>The admission of irrelevant and highly prejudicial other crimes and bad character evidence violated Petitioner's constitutional rights.</u>

Petitioner contends that the trial court erroneously admitted highly prejudicial evidence of alleged other crimes, bad acts and bad character. Petitioner points out that the trial court permitted testimony from Lisa Bridges and Paula Henderson regarding a misdemeanor complaint sought by Brenda Dansby (one of the victims in the present case in which Petitioner is seeking habeas relief). The trial court also permitted testimony from Officer James Morrow concerning his response to an "unwanted person call" at the home of Brenda Dansby (more than a month prior to the murders) where he found Petitioner with Brenda Dansby, who stated she did not want him present at her residence. Additional testimony regarding bad acts was introduced through Marie Dansby (Petitioner's mother). Marie Dansby stated "Brenda had to use law enforcement to prevent [Petitioner] from coming about on the premises." (Direct App. Tr.

22

p. 919.)   Marie Dansby also referred to Brenda Dansby pressing charges and the police "picking my son up."  *Id.* at 920.   Marie Dansby also testified that Petitioner and Brenda Dansby's "on again, off again" relationship was off "when [Petitioner] was locked up... when he would be arrested and sent to prison and all of this stuff about nothing and she would be free to do whatever she wanted to do, that's what I mean."  *Id.* at 921.   Petitioner contends that the improper and highly prejudicial evidence of other crimes/bad acts was compounded by the state prosecutor's reference to the evidence during his closing argument.

Petitioner raised the issue of Marie Dansby's testimony during his direct appeal.  However, he only cited Arkansas Rule of Evidence 404(b), *Crutchfield v. Arkansas*, 756 S.W.2d 917 (Ark 1988), and *Lackey v. Arkansas*, 671 S.W. 2d 757 (Ark. 1984) in support of his claim that the challenged testimony was improper.  He clearly relied solely on state law in advancing his claim, and failed to cite any constitutional or federal law violation. Therefore, the issue of Marie Dansby's testimony is procedurally defaulted, as the state courts were not given an adequate opportunity to address any constitutional or federal law that the challenged testimony may have violated.

The remaining challenged testimony and/or argument issues in Claim XII are procedurally defaulted, as the issues were not presented to the Arkansas courts.  Petitioner has also failed to show

23

cause or prejudice to excuse the procedural defaults, or to show actual innocence. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Therefore, Claim XII must be dismissed.

K. **Claim XIII:** The admission of unreliable, unscientific and inadmissible opinion testimony regarding blood evidence violated Petitioner's constitutional rights.

Petitioner contends that opinion testimony speculating that blood at the scene showed that Ronnie Kimble (a murder victim in the present case from which Petitioner is seeking habeas relief) was running from his attacker at the time of his death was erroneously admitted.

Claim XIII is procedurally defaulted, as the issue was not presented to the Arkansas courts. Furthermore, Petitioner has failed to demonstrate that there is cause and prejudice for the procedural default of this issue, nor has he shown that it would be a fundamental miscarriage of justice for this issues to not be reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Therefore, Claim XIII must be dismissed.

L. **Claim XIV:** The State presented insufficient evidence to establish Petitioner's guilt of capital murder and failed to validly prove the existence of any aggravating circumstance establishing eligibility for a sentence of death.

Petitioner contends that the state failed to prove beyond a reasonable doubt either his guilt of capital murder or the existence of any aggravating circumstance that would make him eligible for a sentence of death. Respondent contends that Petitioner's claim must fail as he has not shown that the Arkansas Supreme Court's decision

AO72A
(Rev. 8/82)

was contrary to or an unreasonable application of constitutional and/or federal law, and that the majority of the claim has been procedurally defaulted.

Specifically, Petitioner contends that the state's proof that Petitioner caused the deaths of Brenda Dansby and Ronnie Kimble in a premeditated and deliberate manner was constitutionally insufficient to support convictions for capital murder. Petitioner states that Kimble was trying to kill Petitioner when Petitioner shot him. Petitioner also states that Petitioner would have been the one who died, had Kimble's gun not jammed. Petitioner also states that Brenda Dansby was actively struggling with Petitioner and trying to keep control of a loaded gun at the time she was shot. Furthermore, Petitioner contends that Petitioner turned himself in to police shortly after the shootings, and the state presented no evidence to establish any motive for Petitioner to kill Kimble or Brenda Dansby.

The Arkansas Supreme Court addressed the issues of whether sufficient evidence was presented to establish that Petitioner caused the deaths of Brenda Dansby and Ronnie Kimble in a premeditated and deliberate manner. The Arkansas Supreme Court held that the location of Brenda Dansby's and Kimble's wounds was sufficient for the jury to find that Petitioner killed the victims in a premeditated and deliberate manner. The court found

> also significant was Larry McDuffie's testimony that [Petitioner] admitted to having planned the murders, as [Petitioner] was troubled by misdemeanor charges which Brenda [Dansby] had caused to be filed against him, which

AO72A
(Rev. 8/82)

> was corroborated by testimony that [Petitioner] was due in court on the morning of the incident.  In sum, the evidence was overwhelming that [Petitioner's] killings of Brenda Dansby and Ronnie Kimble were premeditated and deliberate acts.

*Dansby v. Arkansas*, 893 S.W.2d 331, 336 (Ark. 1995).

Petitioner further contends that the jury found three aggravating circumstances, all of which were constitutionally insufficient: (1) Petitioner previously committed another felony an element of which was the use or threat of violence to another person; (2) in the commission of the capital murders, Petitioner knowingly created a great risk of death to a person other than the victims; and (3) the capital murder was committed in an especially cruel or depraved manner.  (Direct App. Tr., Vol. 6, pp. 1166-67, 1173.)

The Arkansas Supreme Court addressed the sufficiency of evidence in regard to Petitioner's eligibility for a death sentence, specifically reviewing whether Petitioner had previously committed another felony in which there was the use or threat of violence to another person.  Petitioner contends that the trial court erred in admitting a sworn statement of the victim, Brenda Dansby, recorded at his revocation hearing[6] eight years prior to Brenda Dansby's murder.  "In this [sworn] statement, Brenda Dansby stated that it was her testimony that in October 1985, [Petitioner] forced his way into her house by prying a door open with a pocketknife.  She further

---

[6]It appears as though the revocation hearing was regarding a probation period that had been ordered after a false imprisonment conviction.  The outcome of that hearing is not clear.  *See* Statement to the trial court by defense counsel, Direct App. Tr., Vol. 6, p. 682.

AO72A
(Rev. 8/82)

testified that when she asked him to leave, he stated that he would not unless she went to bed with him, which she did, and that soon afterwards she reported the incident to police." *Dansby v. Arkansas*, 893 S.W.2d 331, 341 (Ark. 1995).

The Arkansas Supreme Court reviewed the trial court's admission of the sworn statement in light of Petitioner's contention that the statement should not have been admitted because it had been previously admitted at a revocation proceeding which permitted a lesser degree of proof than required to sustain a criminal conviction.[7]  The issue brought by Petitioner for review by this Court is whether the trial court erred by admitting the evidence without instructing the jury as to which alleged prior offenses were felonies under the law and what the elements were to prove those felonies.

In the case *sub judice*, Petitioner also contends that the other two aggravating factors: that in the commission of the capital murders, Petitioner knowingly created a great risk of death to a person other than the victims and that the capital murder was committed in an especially cruel or depraved manner, were not sufficiently proven.  These issues were not presented in Petitioner's

---

[7]The Supreme Court of Arkansas found that the same degree of proof is not required to sustain a finding that an aggravating or mitigating circumstance exists, as would be required to sustain a conviction if the circumstance was a separate crime.  *Dansby*, 893 S.W.2d at 341 (citing *Clines v. Arkansas*, 656 S.W.2d 684 *cert. denied*, 465 U.S. 1051 (1984)).  If there is evidence of an aggravating or mitigating circumstance, however slight, it is sufficient to submit that issue to the jury.  *Id.*

AO72A
(Rev. 8/82)

direct appeal or his petition for post-conviction relief.

The state was not given an adequate opportunity to address the issues of whether the trial court was obligated to instruct the jury on which of the prior offenses were felonies and the elements of those felonies, or whether the above mentioned two aggravating circumstances were sufficiently proven. Therefore, these issues are procedurally defaulted. Petitioner has failed to show that there is cause and prejudice for the procedural default of these issues, nor has he shown that it would be a fundamental miscarriage of justice for these issues to not be reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

M. **Claim XV:** Errors and omissions by trial counsel during the penalty phase deprived Petitioner of his constitutional rights to the effective assistance of counsel and to a fair trial.

Petitioner contends that his trial counsel unreasonably and prejudicially failed to investigate, discover and present readily available mitigation evidence, in violation of his constitutional rights. Respondent contends that the State reasonably decided that Petitioner's counsel was not ineffective in her preparation for the mitigation phase of his trial. Respondent further asserts that any claims regarding ineffective assistance of counsel during the penalty phase, outside of the specific claim that counsel failed to talk to all mitigation witnesses prior to the penalty phase, are procedurally defaulted.

28

In reviewing Petitioner's Rule 37 petition for post-conviction relief, the Arkansas Supreme Court held that Petitioner failed to demonstrate what other witnesses should have been called and what their testimonies would have been. *Dansby v. Arkansas*, 84 S.W.3d 857, 862 (Ark. 2002) (citing *Higgins v. Arkansas*, 603 S.W.2d 401 (Ark. 1980) (finding the petitioner failed to furnish the names of witnesses requested and the substance of their testimonies, failed to present facts to support his allegation, and failed to demonstrate any prejudice to him by the alleged omissions)). The Arkansas Supreme Court rejected Petitioner's contention that prejudice was proven by the fact the jury found no mitigating factors. *Dansby v. Arkansas*, 84 S.W.3d 857, 862-63 (Ark. 2002) (citing *Hill v. Arkansas*, 962 S.W.2d 762 (Ark. 1998) (finding that a jury is not required to find a mitigating circumstance just because the defendant presents some evidence that would serve as the basis for finding such a mitigating circumstance), additional citation omitted)).

Once a state court makes a decision regarding the merits of a factual issue, that decision is entitled to a presumption of correctness that can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Long v. Humphrey*, 184 F.3d 758 (8th Cir. 1999). Petitioner has failed to adequately rebut the presumption of correctness of the Arkansas Supreme Court's decisions regarding Petitioner's ineffectiveness of counsel claims.

29

Petitioner has failed to show how the decision of the Arkansas Supreme Court was contrary to, or involved an unreasonable application of clearly established Federal/constitutional law. Nor has Petitioner shown that the Arkansas Supreme Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The portions of the claim that deal with issues outside of specifically talking to witnesses and presenting that testimony are procedurally defaulted. Petitioner has not given the State of Arkansas an adequate opportunity to address these issues, as they were not presented to the state in either his direct appeal or his petition for post-conviction relief. Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of these issues, nor has he shown that it would be a fundamental miscarriage of justice for these issues to not be reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

N. **Claim XVI:** The admission into evidence of the transcript of Brenda Dansby's prior testimony violated Petitioner's Sixth, Eighth, and Fourteenth Amendment rights.

Petitioner contends that the transcript of Brenda Dansby's prior testimony at Petitioner's revocation hearing[8] held in 1985 should not have been admitted. This claim was presented to the Supreme Court of Arkansas, which ruled that the claim failed because the trial

---

[8]As previously noted, it appears as though the revocation hearing was regarding a probation period that had been ordered after a false imprisonment conviction. *See* Statement to the trial court by defense counsel, Direct App. Tr., Vol. 6, p. 682.

AO72A
(Rev. 8/82)

court properly allowed Brenda Dansby's prior testimony under Arkansas Rule of Evidence 804(a)(4) and Arkansas Code § 5-4-604(3). Petitioner has failed to show how the Arkansas Supreme Court's ruling was either contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d)(1).

Petitioner also contends that the transcript of the revocation hearing should not have been admitted because it was too remote in time to the murder charges. The Eighth Circuit Court of Appeals has had opportunities to rule that a prior offense is too remote in time to be considered an aggravating circumstance for capital murder, but it has declined to do so. *See Whitmore v. Lockhart*, 8 F.3d 614, 622-23 (8th Cir. 1993) (where the Court recounted the trial court's admission of a prior twenty-three year old attempted robbery conviction as support for an aggravating circumstance to warrant capital punishment, without any discussion regarding the age of the prior offense).

O.   **Claim XVII**: Jurors' consideration of the effect of the incident on Petitioner's son as an aggravating circumstance violated the Eighth and Fourteenth Amendments.

Petitioner contends that four members of the jury considered the impact of the killings on Petitioner's son when making the decision to impose the death penalty.[9] Petitioner argues that this is an improper aggravating factor and cannot be considered when weighing

---

[9]Four of the jurors who sat on Petitioner's case prepared declarations stating that while voting one of the things they considered was the impact Petitioner's actions had on his son. *See* Exhibits A-D, Amended Petition for Writ of Habeas Corpus by a Person in State Custody (Doc. 10.)

AO72A
(Rev. 8/82)

aggravating factors against existing mitigating factors, and allowing the jury to consider this improper aggravating circumstance violates the Eighth Amendment and renders the jury's decision invalid.

Respondent contends that Petitioner failed to raise this claim during his state appeal and thus, the claim is procedurally barred. The claim is procedurally defaulted as Petitioner failed to present this claim to the Arkansas courts. Furthermore, Petitioner has not shown that the procedural default should be excused. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Even had the issue not been procedurally defaulted, the evidence produced by Petitioner does not support a finding that he is entitled to relief. The four jurors who signed the declarations all stated that "the impact Dansby's actions would have on his son" affected their vote. The declarations do not state that there were no other aggravating factors, but only states that this "circumstance" existed and was only one of the things that affected the jurors' vote. Even if the circumstance of the impact of Petitioner's actions on Petitioner's son should not have been considered, there were other aggravating circumstances that were considered, although the jury apparently found no mitigation evidence to weigh against the aggravating circumstance(s). We will not address the issue of the form of the proffered evidence, such as lack of notarizations, cross-examination, etc. We find that Petitioner's Claim XVII is procedurally defaulted and must be dismissed.

32

P.  **Claim XVIII:** <u>Petitioner's death sentences were imposed by</u> <u>a jury that arbitrarily refused to consider the mitigating evidence</u> <u>that was presented.</u>

Petitioner presented this argument to the Arkansas Supreme Court, which found it lacked merit.  The court held that the jury was properly instructed to consider the mitigating factors listed on what was marked Form 2 and any other mitigating factors they deemed appropriate.  The Arkansas Supreme Court's ruling followed United States Supreme Court precedent, to include the leading case on the issue of mitigating factors, *Penry v. Lynaugh*, 492 U.S. 302 (1989). We find that the Arkansas Supreme Court's holding on this issue was neither contrary to clearly established federal law, nor an unreasonable application of the law to the facts.  Therefore, Claim XVIII must be dismissed.

Q.  **Claim XIX:** <u>Errors and omissions by state appellate counsel</u> <u>deprived Petitioner of his constitutional right to effective</u> <u>assistance on appeal.</u>

Petitioner's appointed trial counsel represented him during his direct appeal.  Petitioner contends that his trial counsel was conflicted from representing him as his appellate counsel, and was ineffective when she delegated the task of identifying appellate issues to be raised to a disbarred attorney (who also prepared the pleadings that were filed with the Supreme Court of Arkansas). Petitioner also states that his appellate trial counsel was ineffective by failing to advance available legal claims, failing to marshal all available facts in support of legal claims, and failing

33

to advance all available legal bases for claims that were advanced. These failings, according to Petitioner, were the result of counsel's negligence and not the product of any reasonable strategic decision. Petitioner specifically alleges that his appellate counsel failed to conduct an adequate investigation of the facts of the case or Petitioner's social history.

Petitioner did not raise in state court any ineffective assistance of counsel claims against his appellate counsel. Petitioner did file a petition for post-conviction relief following his direct appeal, but did not include a claim of ineffectiveness regarding his appellate counsel. Therefore, this claim is procedurally defaulted. Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of this claim, nor has he shown that it would be a fundamental miscarriage of justice for this claim to not be reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). We find that Claim XIX is procedurally defaulted and must be dismissed.

In addition to presenting this claim, Petitioner contends that the ineffectiveness of his appellate counsel provides cause to warrant a finding that his procedurally defaulted claims are excused. Petitioner is correct in that ineffective assistance of counsel may be cause for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, for ineffective assistance of counsel to be considered as cause for a procedural default, the ineffective

34

assistance of counsel claim generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 489. Therefore, as this claim itself is procedurally defaulted, it cannot be used to excuse other procedurally defaulted claims.

R. **Claim XX:** The Arkansas Supreme Court's method of proportionality review violates the constitution.

Petitioner contends that the Arkansas Supreme Court failed to conduct an adequate proportionality review of his sentence. Petitioner points out that Arkansas law requires the Arkansas Supreme Court to undertake a proportionality review in all capital cases when the death penalty has been imposed. Petitioner states that the court determined that Petitioner had been convicted of a double homicide and that fact automatically qualified Petitioner for the death penalty. Petitioner contends that the proportionality review was not adequate since the law that created the aggravating circumstance qualifying a person for the death penalty--that "the death of more than one (1) person in the same criminal episode"--was not in effect at the time of the offense or Petitioner's trial. *See* Ark. Code Ann. § 5-4-604(4).

Petitioner contends that the above mentioned aggravating circumstance qualifying a person for the death penalty was added by amendment in 1995. Prior to the 1995 amendment, Ark. Code Ann. § 5-4-604(4) read "The person in the commission of the capital murder knowingly created a great risk of death to a person other than the

35

victim." However, the pre-1995 amendment law was interpreted to "cover actual deaths though only 'risk' is mentioned in the statute...." *Cox v. Arkansas*, 853 S.W.2d 266, (Ark. 1993) (citation omitted), *cert. denied* 525 U.S. 834 (1998).

"[T]he Constitution does not require us to look behind [a state's supreme court's] conclusion that the death sentence was not disproportionate to consider the manner in which the court conducted its review or whether the court misinterpreted the [state] statute." *Bannister v. Delo*, 100 F.3d 610, 627 (8th Cir. 1996) (citing *Six v. Delo*, 94 F.3d 469 (8th Cir. 1996). We find that the Arkansas Supreme Court's proportionality review was reasonable. Therefore, Petitioner is not entitled to relief on his proportionality challenge and Claim XX must be dismissed.

S. **Claim XXI:** Errors and omissions by conflicted state post-conviction counsel deprived Petitioner of his constitutional rights to effective assistance on state collateral review.

Petitioner contends that his state post-conviction counsel was ineffective and unduly conflicted during his post-conviction proceedings. However, there is no constitutional right to an attorney during state post-conviction proceedings; therefore, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

Petitioner alleges that since the state of Arkansas decided to provide counsel to defendants during post-conviction proceedings, the

36

provided counsel must be competent because due process requires the proceeding to be fundamentally fair.  However, the same argument was rejected by the United States Supreme Court in *Pennsylvania v. Finley*, 481 U.S. 551 (1987).

Additionally, this claim is procedurally defaulted, as the state courts have not been given an opportunity to address the merits of this claim.  Petitioner has failed to show that there is cause and prejudice for the procedural default of this claim, nor has he shown that it would be a fundamental miscarriage of justice for this claim to not be reviewed.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Therefore, Claim XXI must be dismissed.

Petitioner's attempt to use this claim, ineffective assistance of post-conviction counsel, to establish cause for the procedural default of other claims must fail.  Attorney error during post-conviction proceedings is not cause for any procedural default.  *See Coleman*, 501 U.S. at 753-56; *see also Nave v. Delo*, 62 F.3d 1024, 1033-34 (8th Cir. 1995), *cert. denied*, 517 U.S. 1214 (1996) (application of *Coleman* in a capital case).  Even if attorney error during post-conviction proceeding could establish cause for procedurally defaulted claims, this claim itself is procedurally defaulted.  For an ineffective assistance claim to be used to establish cause for a procedural default, it "must first be presented to the state courts as an independent claim...."  *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

37

T.   **Claim XXII:** <u>The sentencing provisions of Arkansas' capital murder statute violated the constitution.</u>

Petitioner argues that the capital sentencing scheme in Arkansas unconstitutionally constrains the jury's ability to give full effect to mitigating evidence and because the identity between the first degree murder and capital murder instructions unconstitutionally risks an arbitrary sentencing decision.   The statutory scheme in Arkansas has been upheld in the face of these constitutional challenges.   *See Singleton v. Lockhart*, 962 F.2d 1315, 1323 (8th Cir. 1992); *Simpson v. Lockhart*, 942 F.2d 493, 496-97 (8th Cir. 1991). Those precedents are binding on this Court.   Therefore, Claim XXII must be dismissed.

U.   **Claim XXIII:** <u>Petitioner's death sentence is constitutionally prohibited because it cannot be carried out without the infliction of cruel and unusual punishment.</u>

This claim was not presented to the state courts, as such it is procedurally defaulted.   Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of this issue, nor has he shown that it would be a fundamental miscarriage of justice for this issue to not be reviewed.   *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

This claim does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could have been discovered through the exercise of due diligence.   28 U.S.C. § 2254(e)(2)(A).   Furthermore, the facts underlying this claim are not sufficient to establish by clear and

38

convincing evidence that but for constitutional error no reasonable factfinder would have found Petitioner guilt of the underlying offense or punishment. *See* 28 U.S.C. § 2254(e)(2)(B). Claim XXIII must be dismissed because it is procedurally defaulted and the default is not excused.

     V.   **Claim XXIV:** <u>Petitioner's sentence is invalid under international law.</u>

This claim is procedurally defaulted as it was not presented to the state courts. Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of this issue, nor has he shown that it would be a fundamental miscarriage of justice for this issue to not be reviewed. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In advancing this claim, Petitioner does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A). Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Petitioner guilt of the underlying offense. 28 U.S.C. S 2254(e)(2)(B). Claim XXIV must be dismissed because it is procedurally defaulted and the default is not excused.

AO72A
(Rev. 8/82)

W.  **Claim XXV:** <u>The Court should conduct a cumulative assessment of whether constitutional errors occurred and whether such errors were prejudicial.</u>

Petitioner has failed to presented this claim to the state courts; therefore, the claim is procedurally defaulted.  Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of this issue, nor has he shown that it would be a fundamental miscarriage of justice for this issue to not be reviewed.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could have been discovered through the exercise of due diligence.  28 U.S.C. § 2254(e)(2)(A).  Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Petitioner guilt of the underlying offense.  28 U.S.C. S 2254(e)(2)(B).  Even if the claim was not procedurally defaulted, the Eighth Circuit Court of Appeals has rejected this argument.  *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8ᵗʰ Cir. 1996). Claim XXV must be dismissed because it is procedurally defaulted and the default is not excused.

X.  **Claim XXVI:** <u>As conceded by Petitioner's counsel, his defense team unreasonably and prejudicially failed to protect Petitioner's constitutional rights to be convicted and sentenced by a fair and impartial jury.</u>

This claim appears to be another ineffective assistance of counsel claim.  Petitioner states that his trial counsel failed to

40

conduct an adequate voir dire of potential jurors, failed to make appropriate objections and create an adequate record on the *Batson* claim, failed to secure individualized, sequestered voir dire, and failed to ensure that this African-American Petitioner's jury be drawn from a representative cross section of the community.

If this is an ineffective assistance of counsel claim, it is procedurally defaulted.  The state courts were not given an adequate opportunity to address the merits of this claim, as it was not presented during Petitioner's direct appeal or his petition for post-conviction relief.  Furthermore, Petitioner has failed to show that there is cause and prejudice for the procedural default of these issues, nor has he shown that it would be a fundamental miscarriage of justice for these issues to not be reviewed.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Therefore, Claim XXVI must be dismissed

If this is a claim requesting a cumulative review, that request is **DENIED**.  The Eighth Circuit Court of Appeals has rejected the argument that circumstances warrant a court to conduct a commutative review.  *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996).

Y.  Miscellaneous Issues.

Throughout Petitioner's Second Amended Petition for Writ of Habeas Corpus (Doc. 25), Petitioner has made several requests for additional time, discovery, access to the Court's subpoena power, expansion of the record, and an evidentiary hearing.  These requests

41

have not been shown to be warranted, nor do we view the requests to be such that they would assist us in reviewing the petitions before us.   Therefore, all of the above mentioned requests are hereby **DENIED.**

## V.   CONCLUSION

Petitioner has failed to establish his entitlement to a writ of habeas corpus pursuant to the boundaries established by 28 U.S.C. § 2254, his petition, in their entirety, are **DENIED.**   Petitioner's repeated requests for an evidentiary hearing are also **DENIED.** Judgment will be entered accordingly.

IT IS SO ORDERED this 22nd day of July 2008.


/S/ Robert T. Dawson
Robert T. Dawson
United States District Judge


42